Argued 21 March, decided 23 April, 1907.

## Ex parte HOUGHTON.

9 L. R. A. (N. S.) 737: 89 Pac. 801.

CONSTITUTION—SCOPE OF PARDONING POWER.*

1. Under Const. Or. Art. V, § 14, providing that the governor shall have power to grant reprieves, commutations and pardons, after conviction, etc., subject to such regulations as may be provided by law, and Section 1572, B. & C. Comp., providing that reprieves, commutations and pardons may be granted by the Governor upon such conditions and with such restrictions as he may think proper, the Governor has authority to attach to a pardon any condition ⁺hat is legal, moral ɔr possible of performance- to be performed either before or after the pardon shall take effect, as, that the person so favored shall remain a law-abiding citizen.

PARDON—HOW BREACH OF CONDITION MAY BE DETERMINED.

2. Where a pardon provides by its terms that a stated official shall determine whether the conditions on which it was issued have been broken, the proviso becomes binding upon the acceptance of the favor, and the person pardoned is not entitled to a judicial determination of the claim of condition broken.

From Marion: WILLIAM GALLOWAY, Judge.

Statement by MR. CHIEF JUSTICE BEAN.

On April 21, 1904, Charles V. Houghton was sentenced to the penitentiary for the term of five years for the crime of robbery. On March 15, 1906, the Governor commuted his sentence to expire on the 18th of the month, on the following condition:

"It is understood, however, between the executive and the said Chas. Houghton, and this commutation is delivered to and accepted by him upon this distinct agreement, that said Chas. Houghton is to be and remain a law-abiding citizen, and in case he violates any of the laws of the United States or of the state, or of any municipality in which he lives, the Governor of the state, whoever he may be, whenever he is satisfied, by such investigation as he may see fit to make, that said Chas. Houghton has violated his agreement or any of the conditions of this commutation, he may revoke the same without notice, and without the intervention of any court, by direction to any officer of the penitentiary or any sheriff of any county, cause the said Chas.

*NOTE.—In addition to the many annotated cases cited in the opinion, see monographic note on Conditional Pardons in 111 Am. St. Rep. 108-116, and State v. Hunter, with note, 104 Am. St. Rep. 361, 366. Read, also, note in 5 L. R. A. (N. S.) 1064, and State v. Horne, 7 L. R. A. (N. S.) 719.                                                    REPORTER.

Houghton to be arrested and returned to the penitentiary of the State of Oregon to serve the unexpired and unserved portion of his sentence, and this commutation is delivered with this distinct understanding and agreement."

The commutation was accepted by Houghton, and in pursuance thereof he was discharged from custody and remained at large until the 28th of December, 1906, when he was rearrested by the superintendent of the penitentiary by virtue of an order or warrant of the Governor, which, after stating the granting of the commutation and the condition thereof, proceeded:

"Whereas I have satisfied myself by investigation entirely satisfactory to me that said Charles Houghton has violated the terms of his agreement, in this: that he has been since his release convicted of the crime of larceny in Multnomah County, Oregon, and has been arrested for violating the ordinances of the City of Portland: Now, therefore, I do hereby revoke the said commutation and do order and direct that you arrest the said Charles Houghton and return him to the penitentiary of the State of Oregon, there to serve the unexpired portion of his sentence."

Houghton thereupon instituted proceedings in habeas corpus, claiming that his imprisonment is irregular and void on the following grounds:  (1) That the Governor has no authority under the constitution or laws of this state to grant conditional commutations or pardons, and therefore the condition included in the commutation issued to the petitioner was void and the pardon absolute; (2) that, if the Governor has authority to grant conditional pardons or commutations, it is a judicial and not an executive question whether the prisoner has violated such conditions and thereby forfeited his liberty.  The writ was denied, and the petitioner remanded to the custody of the superintendent of the penitentiary, and he appeals.                    AFFIRMED.

For appellant there was a brief over the name of *Mac Mahon & McDevitt*, with an oral argument by *Mac Mahon.*

For respondent there was a brief over the names of *Andrew Murray Crawford*, Attorney General, and *I. H. Van Winkle*, with an oral argument by *Mr. Crawford.*

Mr. Chief Justice Bean delivered the opinion.

1. The constitution provides that the Governor "shall have power to grant reprieves, commutations and pardons, after conviction, for all offenses except treason, subject to such regulations as may be provided by law": Const. Or. Art. V, § 14.

There have been no regulations governing the exercise of the pardoning power provided by law, except the declaration in Section 1572, B. & C. Comp., that reprieves, commutations and pardons may be granted by the Governor upon such conditions and with such restrictions and limitations as he may think proper, which is but a restatement of the law as it exists without legislative action. It has everywhere been held, so far as we have been able to ascertain, that under a constitution like ours a pardon is a mere act of grace, and the pardoning power may attach to it any condition precedent or subsequent that is not illegal, immoral or impossible of performance; and, if the pardon is accepted by the prisoner, he will be bound to a compliance with the conditions imposed, and has no right to contend that the pardon is absolute: *Fuller* v. *State,* 122 Ala. 32 (26 South. 146 : 45 L. R. A. 502 : 82 Am. St. Rep. 1) ; *Ex parte Prout,* 12 Idaho, 494 (86 Pac. 275 : 5 L. R. A., N. S., 1064) ; *Arthur* v. *Craig,* 48 Iowa, 264 (30 Am. Rep. 395) ; *People* v. *Marsh,* 125 Mich. 410 (84 N. W. 472 : 51 L. R. A. 461 : 84 Am. St. Rep. 584) ; *Ex parte Reno,* 66 Mo. 266 (27 Am. Rep. 337) ; *State* v. *McIntire,* 1 Jones' Law, 1 (59 Am. Dec. 566, note) ; *Lee* v. *Murphy,* 22 Grat. 789 (12 Am. Rep. 563) ; *Ex parte Wells.* 59 U. S. (18 How.) 307 (15 L. Ed. 421). A commutation is governed by the same rule: *People* v. *Burns,* 77 Hun, 92 (28 N. Y. Supp. 300) ; affirmed, 143 N. Y. 665 (39 N. E. 21) ; *In re Whalen,* 65 Hun, 619 (19 N. Y. Supp. 915).

Now, the conditions imposed by the Governor in this case were not illegal, immoral or impossible of performance, and to enforce them does not deprive the petitioner of any legal right. At the time the commutation was issued the petitioner was lawfully in prison, serving a sentence imposed by law for a crime

committed by him. The commutation was an act of grace or favor, and he was not obliged to accept it unless he so desired. He might have refused it, and served out his sentence as originally imposed, but chose to accept the conditional commutation, and in doing so stipulated that for a violation of the conditions he might be summarily arrested by order of the Governor and remanded to the penitentiary to serve the remainder of his original sentence. There is nothing unlawful or illegal in such an agreement, and no reason why it should not be enforced in the manner stipulated.

2. Some adjudications are cited as holding that a violation of a conditional pardon must be judicially determined, and that a convict cannot be rearrested or remanded to suffer his original sentence because of an alleged nonperformance of the conditions upon a mere order of the Governor: *Alvarez* v. *State,* 50 Fla. 24 (39 South. 481: 111 Am. St. Rep. 102) ; *State* v. *Wolfer,* 53 Minn. 135 (54 N. W. 1065: 19 L. R. A. 783: 39 Am. St. Rep. 582) ; *People* v. *Moore,* 62 Mich. 496 (29 N. W. 80). But in neither of the cases referred to did the pardon provide that it might be revoked and the convict rearrested and remanded on order of the pardoning power for a violation of the condition. In the Alvarez Case, it is expressly stated that such a stipulation would be valid and enforceable in the manner provided, and it was so intimated in the Wolfer Case. *People* v. *Moore,* 62 Mich. 496 (29 N. W. 80) involves merely the constitutionality of a statute authorizing an agent of the prison to arrest and remand without warrant a pardoned convict when it comes to the knowledge of such officer that he has violated the conditions of his pardon.

When a conditional pardon is issued and accepted which does not provide how it shall be determined whether the prisoner has violated the conditions imposed, the law seems to be that he is entitled to a hearing before some competent judicial tribunal before he can be remanded to serve his original sentence: 24 Am. & Eng. Enc. Law (2 ed.), 595. But, where the pardon provides upon its face that the Governor may summarily de-

termine whether the conditions have been complied with, and, if he finds that they have not, may revoke the pardon and order the reconfinement of the offender, such stipulation becomes binding upon the convict, and authorizes his rearrest and commitment upon the terms and in the manner imposed: 24 Am. & Eng. Enc. Law (2 ed.), 595. Thus, the Governor of Iowa pardoned a convict confined in the penitentiary on condition that he should during the remainder of the term of his sentence "refrain from the use of intoxicating liquors as a beverage," and should "use all proper exertion for the support of his mother and sister," and should not "be convicted of any offense against any of the criminal laws of the state." The pardon provided that, if he did not comply with the provisions imposed, he was to be "liable to summary arrest upon the warrant of the Governor of the state for the time being, whose judgment shall be conclusive as to the sufficiency of the proof of the violation of the" clause referring to drinking and support, "and to be confined in the penitentiary of the state for the remainder of the term of his sentence." The prisoner accepted the pardon, but violated its conditions. The Governor thereupon issued a warrant reciting the facts, and the prisoner was rearrested and reconfined in the penitentiary. He sought release by habeas corpus, but the court denied his application, holding that he was not entitled to a judicial determination of the fact of forfeiture and that the conditions were valid. The court said: "It (the pardon) expressly provides that the Governor may by his warrant revoke it upon such showing of a violation of the conditions as he may deem sufficient. Upon its revocation the legal status of the petitioner must be regarded the same as it was before the pardon was granted. It must be remembered that the pardon was an act of grace. The petitioner had no right to demand it. It was founded on no right which he could enforce in any court. What he accepted was in the nature of a favor or gift. It was not such a contract as entitled him to have a judicial determination of forfeiture, in the face of his stipulation that the Governor might revoke it upon such showing as might be satisfactory to him": *Arthur* v. *Craig,* 48 Iowa, 264 (30 Am. Rep. 395).

A convict in Indiana was pardoned on condition that "he leave and remain out of the state during the time for which he was sentenced." The pardon stipulated that the Governor reserved the right to revoke it at any time upon the condition being broken, and that he should be the sole judge of any violation thereof. The Governor determined that the prisoner had violated the conditions imposed and directed that he be rearrested and remanded to prison, which was done accordingly. Upon habeas corpus the court held that the Governor granted the pardon as a matter of grace, and not as a duty, and could impose such conditions as he saw fit, and, when a prisoner accepted it, he by implication acceded to all its terms and conditions, and that the Governor had the power to order his rearrest and return to prison at any time. The court said the relation of the prisoner to the Governor after the issuance of the conditional pardon was like that of bail to their principal, who, according to the quaint language of the old books, "have their principal always upon a string, and may pull the string whenever they please, and render him in their own discharge": *Woodward* v. *Murdock*, 124 Ind. 439 (24 N. E. 1047). The same principle was announced by the Supreme Court of Massachusetts in *Kennedy's Case*, 135 Mass. 48.

Judgment of the court below is affirmed.        AFFIRMED.

---

Argued 14 February, decided 9 April, 1907.
### SEABROOK *v.* COOS BAY ICE CO.
89 Pac. 417.

BOUNDARIES—NATURE OF SURVEYOR'S EVIDENCE.

1. In testifying as to the location of points in public surveys, it must be remembered that surveyors are only witnesses, and they should confine their testimony to what acts they performed, leaving the conclusion as to the location of the point to the jury, and the court can determine, as a matter of law, whether they have pursued the correct method in the survey.

BOUNDARIES—MANNER OF LOCATING CORNERS.

2. Where, on an issue as to the location, on the ground of the boundaries of a tract of tide lands, the description in the deed called for a place of beginning a certain number of chains northward from a "post at angle in meander line" and it was then stated that the post was a certain num-